**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JEFFREY WORSHAM,         )
                          )         3:08-CV-00591-ECR-VPC
      Plaintiff,         )
                          )
      vs.                )        **REPORT AND RECOMMENDATION**
                          )        **OF U.S. MAGISTRATE JUDGE**
MICHAEL J. ASTRUE,        )
                          )
      Defendant.        )        December 30, 2009
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Before the court is plaintiff's motion for reversal of the commissioner's decision (#16). Defendant opposed and filed a cross-motion for summary judgment (#19). For the reasons set forth below, the court recommends that plaintiff's motion for reversal (#16) be denied and defendant's cross motion for summary judgment (#19) be granted.

## I.  ADMINISTRATIVE PROCEEDINGS

On March 29, 2005, plaintiff Jeffrey Worsham ("plaintiff") filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act (AR 43, 71). Plaintiff alleged disability based on obesity, asthma, sleep apnea, borderline intellectual functioning, and moderate recurrent major depressive disorder. Plaintiff's claim was denied initially and on reconsideration (AR 37, 42, 47). On October 25, 2007, a hearing was held before Administrative Law Judge ("ALJ") Mark C. Ramsey, where plaintiff was represented by attorney, Dennis A. Cameron (AR 12-23 (opinion); AR 540-566 (transcript)). The ALJ filed a written opinion on January 24, 2008, in which he upheld the denial of plaintiff's claim. Plaintiff requested administrative review on March 14, 2008, and the Appeals Council denied review on September 10, 2008, making the ALJ's decision final (AR 7, 3). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on

1  November 6, 2008 (#1).

2                                    **II. BACKGROUND**

3          Plaintiff was born on November 28, 1958, and was forty-eight years old at the time of his

4  hearing (AR 542).  Plaintiff has no high school diploma, but he has completed special education (AR

5  543).  Plaintiff's past relevant employment includes work as a dishwasher, cardboard compactor, and

6  banquet set-up employee (AR 544, 545, 547).  Plaintiff alleges that he became disabled on January

7  1, 2000 (AR 12).

8          The ALJ found the plaintiff "not disabled" because he found plaintiff able to perform other

9  jobs that exist in significant numbers in the national economy (AR 22-23).  Specifically, the ALJ

10  made the following findings:

11          1.      The claimant met the insured status requirements of the
                    Social Security Act through June 30, 2001.
12
13          2.      The claimant has not engaged in substantial gainful
                    employment since January 1, 2000, the alleged onset date (20
                    CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971
14                  *et seq.*).

15          3.      The claimant has the following severe impairments: obesity,
                    asthma, sleep apnea, borderline intellectual functioning, and
16                  moderate recurrent major depressive disorder (20 CFR
                    404.1520(c) and 416.920(c)).
17
18          4.      The claimant does not have an impairment or combination of
                    impairments that meets or medically equals one of the listed
                    impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20
19                  CFR 404.1520(d), 404.1525, 404.1526, 416.925 and
                    416.926).
20
21          5.      After careful consideration of the entire record, the
                    undersigned finds that the claimant has the residual functional
                    capacity to perform light work except for avoiding
22                  concentrated exposure to temperature extremes and hazards
                    (these are supported by his obesity, sleep apnea and asthma)
23                  and mentally simple routine tasks (unskilled activity) (this is
                    supported by his recurrent moderate major depression and
24                  borderline intellectual functioning)

25          6.      The claimant is unable to perform any past relevant work (20
                    CFR 404.1565 and 416.965).
26
27          7.      The claimant was born on November 28, 1958 and was 41
                    years old, which is defined as a younger individual age 18-49,
                    on the alleged disability onset date (20 CFR 404.1563 and
28                  416.963).

                                          2

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2000, through the date of this decision (20 CFR 416.920(g)).

(AR 12-23).

## III.  STANDARD OF REVIEW

The court must uphold the decision of an administrative law judge if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record.  *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is more than a mere scintilla but less than a preponderance.  *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279.  "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings.  However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted).  The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).  A claimant is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot ... engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

Pursuant to the Social Security Act, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.  The Administrative Law Judge considers: (1) whether the person is engaging in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the individual is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the person from doing any other work.  *Id.*  If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

## IV.  ANALYSIS

Plaintiff generally argues that the ALJ committed legal error and that substantial evidence did not support the ALJ's conclusions.  Specifically, plaintiff asserts that the ALJ (1) improperly discredited plaintiff's testimony;  (2) failed to consult a vocational expert and solely relied on the Medical-Vocational Guidelines (the "grids"); and (3) improperly rejected the opinion of plaintiff's treating physician (#16, pp. 4-6).  Defendant's position is that the ALJ properly dismissed plaintiff's credibility, that the ALJ properly used the grids as a framework, and that the ALJ properly dismissed the opinion of plaintiff's physician (#19).

**A.    ALJ's Discounting of Plaintiff's Credibility**

Plaintiff claims that the ALJ improperly discredited his testimony without providing specific reasons (#16, p. 5).  Defendant contends that the ALJ gave clear and convincing reasons for discounting plaintiff's credibility; therefore, the ALJ's decision should be affirmed (#19, pp. 4-5).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  If the ALJ rejects the claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "These findings, properly supported

4

by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001), *citing Smolen*, 80 F.3d at 1285.

In this case, the ALJ provided clear and convincing reasons for discrediting plaintiff's testimony. The ALJ did not reject plaintiff's testimony solely because it was not corroborated. Rather, the ALJ noted portions of plaintiff's medical records that belied his subjective complaints before the judge. For example, Nevada Mental Health Institute medical records indicated that plaintiff was "doing okay" (AR 21); Dr. Evarts's psychological evaluation noted that plaintiff experienced the "normal ups and downs range of emotional functioning and [test results were] an indication that depression was not currently an issue in his life," *Id.*; and Dr. Ruckstuhl's psychological evaluation indicated that plaintiff "could perform simple tasks." *Id.* In addition, the ALJ also noted that there were no psychiatric hospitalizations, no evidence of group therapy, and no evidence of any crisis center contacts. *Id.*

Questions of credibility are for the ALJ to decide, and "where . . . the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the court's] role is not to second guess that decision." *Fair*, 885 F.2d at 604. The ALJ's specific findings justify his decision to discredit plaintiff's allegations of mental deficit, and such reasons are supported by substantial evidence in the record.

**B.    ALJ's Use of the Grids**

Plaintiff argues that the ALJ erred in his failure to consult a vocational expert ("VE") and his subsequent use of the grids. Specifically, plaintiff argues that non-exertional impairments, such as those of plaintiff, require the use of a VE. *Id.* Defendant argues that plaintiff's non-exertional impairments were not sufficiently severe to preclude use of the grids.

The Ninth Circuit Court of Appeals has described the applicability of the grids as follows:

> When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations.

*Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983)) (citing *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988).

"The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.'" *Hoopai*, 499 F.3d at 1076 (quoting *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir.1986)). But the grids are inapplicable "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Id.* (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988)).

In this case, the ALJ properly used the grids as a framework to determine that plaintiff was "not disabled" and could perform jobs that exist in the national economy (AR 22). At step four, the ALJ found that plaintiff had the residual functional capacity to perform light work (AR 16). At step five, the ALJ need not have relied on the VE testimony because evidence existed to demonstrate that plaintiff's non-exertional impairments were not "significant" nor "sufficiently severe." For example, psychological reports from Dr. Ruckstuhl and Dr. Gerson indicated that plaintiff exhibited a normal limited mental status examination and could perform simple tasks (AR 19). The ALJ then used the grids as a framework to identify "approximately 1,600 separate sedentary and light occupations" (AR 22). Therefore, the ALJ did not commit error in his use of the grids as a framework in his determination.

## C.    Opinion of the Treating Physicians

Plaintiff argues that the ALJ failed to give specific reasons as to why he discredited the opinion of Dr. Evarts, who plaintiff maintains is a "treating physician." Defendant asserts that Dr. Evarts is not plaintiff's "treating physician" and that the ALJ provided sufficient reasons for not

1    crediting his testimony.

2           "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony

3    and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *citing*

4    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Cases within the Ninth Circuit distinguish

5    between the opinions of (1) treating physicians, (2) examining physicians, and (3) non-examining

6    physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating

7    physicians are afforded greater weight than the opinions of other physicians because treating

8    physicians "are employed to cure and thus have a greater opportunity to know and observe the

9    patient as an individual...."  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations

10   omitted).

11          Federal regulations define a "treating source" as the claimant's "own physician, psychologist,

12   or other acceptable medical source who provides [the claimant], or has provided [the claimant], with

13   medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the

14   claimant]."  20 CFR § 404.1502(d).  Defendants argue that the regulations clearly call for a "treating

15   physician" to have seen the claimant "a number of times" and "long enough to have obtained a

16   longitudinal picture of [claimant's] impairment.  *See id.* at §§ 404.1527(d)(2), 416.1527(d)(2)(i).

17   These regulations note how much weight the ALJ will afford to the medical opinion, but they do not,

18   themselves, end the court's analysis on who potentially qualifies as a "treating source."  Defendant

19   cites *Matney v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992), for the rule that a physician who sees a

20   claimant once cannot be a treating source.  However, the court has subsequently held that the number

21   of visits is not dispositive of the issue.  In *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039

22   (9th Cir. 2003), the court remanded the case to determine whether a physician who saw a claimant

23   only once but supervised a "treatment team" could be considered a treating source.  The court noted

24   that "[i]t is not necessary, or even practical, to draw a bright line distinguishing a treating physician

25   from a non-treating physician. Rather, the relationship is better viewed as a series of points on a

26   continuum reflecting the duration of the treatment relationship and the frequency and nature of the

27   contact."  *Benton*, 331 F.3d at 1038 (quoting *Ratto v. Sec'y, Dep't of Health & Human Servs.*, 839

28   F. Supp. 1415, 1425 (D. Or. 1993)).

                                                    7

1      After reviewing the record, the court does not find that Dr. Evarts was a treating source.  The

2  administrative record reveals that Dr. Evarts examined plaintiff only one time as opposed to

3  plaintiff's several visits to the Nevada Mental Health Institute from April 2002 to August 2004 (AR

4  21, 333).  Although a single examination is not conclusive of Dr. Evarts's ability to be viewed as a

5  treating physician, the record does not contain additional facts that plaintiff and Dr. Evarts had any

6  further contact.  Therefore, the court finds that Dr. Evarts cannot be viewed as plaintiff's treating

7  physician.

8      Here, the ALJ's decision to discredit the opinion of Dr. Evarts, a nontreating source, was

9  based not only on the opinions of other physicians who contradicted Dr. Evarts but also on plaintiff's

10  treating records, chart notes, and his own testimony regarding his daily activities (AR 21).  "The ALJ

11  is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

12  ambiguities.  We must uphold the decision where the evidence is susceptible to more than one

13  rational interpretation."  *Andrews*, 53 F.3d at 1039-40.   Since the record is replete with medical

14  evidence supporting the ALJ's determination, the court will not disturb the decision of the ALJ.

15                                    **V. CONCLUSION**

16      Based on the foregoing, the court concludes that the ALJ's decision was supported by

17  substantial evidence and therefore recommends that plaintiff's motion for reversal (#16) be

18  **DENIED** and defendant's cross motion for summary judgment (#19) be **GRANTED**.

19      The parties are advised:

20      1.    Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

21  the parties may file specific written objections to this report and recommendation within fourteen

22  days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

23  Recommendation" and should be accompanied by points and authorities for consideration by the

24  District Court.

25      2.    This report and recommendation is not an appealable order and any notice of appeal

26  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.  RECOMMENDATION**

      **IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal (#16) be **DENIED** and defendant's cross-motion for summary judgment (#19) be **GRANTED**.

      **DATED:** December 30, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**

9